111 P.3d 1251 (2005)
STATE of Washington, Respondent,
v.
Richard Thomas SANSONE, Appellant.
No. 53584-6-I.
Court of Appeals of Washington, Division 1.
May 23, 2005.
*1253 Susan Wilk, Washington Appellate Project, Seattle, WA, for Appellant.
Amy Holt, King County Prosecutor Office, Seattle, WA, for Respondent.
APPELWICK, J.
¶ 1 Richard Sansone appeals his sentence for violating a condition of his community placement. The condition required that he not possess or peruse pornography without prior approval of his probation officer, and that the term "pornography" was to be defined by his probation officer. His probation officer found him in possession of photographs she deemed inappropriate. Sansone claims that the condition prohibiting pornography was unconstitutionally vague, both facially and as applied. He also claims that the sentencing court's delegation to the Department of Corrections (DOC) to define the term "pornography" violates separation of powers principles. In addition, he argues that there was insufficient evidence to find him in violation of the condition, and that the sentencing court abused its discretion in refusing to admit certain evidence. The state has conceded that the condition was improperly applied to Sansone's conduct in this instance, and we accept this concession. We hold that the term "pornography" is unconstitutionally vague. Although delegation to the probation officer or treatment provider to define a term in a community placement condition may be permissible in some circumstances, the vagueness is not cured by the delegation here. We reverse and remand.

FACTS
¶ 2 Richard Sansone was charged with one count each of attempted unlawful imprisonment, assault in the third degree and rape in the third degree. These charges stemmed from an incident with Sansone's then-girlfriend. Sansone pleaded guilty to all three charges. In November 2000, he was sentenced to eight months imprisonment for the assault charge, and 12 months and one day for the rape charge, to run concurrently. He was also sentenced to community placement after his release. One of the terms of Sansone's community placement was that he "not possess or peruse pornographic materials unless given prior approval by [his] sexual deviancy treatment specialist and/or Community Corrections Officer. Pornographic materials are to be defined by the therapist and/or Community Corrections Officer."
¶ 3 On August 26, 2003, Sansone met with Kathi Bulman, his Community Corrections Officer (CCO). During the meeting, Sansone opened his notebook to look for something, and Bulman noticed that Sansone had some photographs in the briefcase.[1] Bulman looked at the photographs, which depicted clothed women in low-cut blouses, a woman clothed only from the waist down but covering her breasts with her arms, and a woman covered in somewhat sheer material. The photographs were laminated. Bulman believed that the photographs were inappropriate for a sex offender to possess, so she took Sansone into custody for possessing pornographic materials in violation of his community placement condition.
*1254 ¶ 4 On October 20, 2003, the trial court held a hearing on whether Sansone had violated his community placement condition. Sansone argued that the photographs were not pornography, and, to support his argument, offered some clippings from mainstream magazines that he argued were no worse than the photos he possessed. The trial court did not consider the clippings, holding that they were irrelevant to the issue of whether Sansone had violated his probation. The state argued that even though the photographs would not have been pornography in someone else's hands, they were inappropriate for Sansone to possess. The trial court agreed, found that Sansone had willfully violated his community placement condition, and sentenced Sansone to 60 days confinement, with credit for time served. Sansone appeals the trial court's order.[2]

DISCUSSION

I. Mootness
¶ 5 Sansone claims that his sentence condition is unconstitutionally vague on its face, in violation of his due process rights. He also asserts that the condition is vague as applied. In addition, Sansone argues that the sentencing condition violated the principles of separation of powers. He also claims that the state failed to sufficiently prove that he violated the condition, and that the sentencing court abused its discretion by refusing to admit some of Sansone's evidence. The state has conceded that the prohibition of pornography was improperly applied to Sansone's conduct in this case and the order modifying his judgment and sentence should be reversed. The threshold question is whether this case is moot in light of the state's concession.
¶ 6 "A moot case is one which seeks to determine an abstract question which does not rest upon existing facts or rights." Hansen v. West Coast Etc. Co., 47 Wash.2d 825, 827, 289 P.2d 718 (1955). In general, a case presenting a moot issue on appeal is dismissed. City of Seattle v. Johnson, 58 Wash.App. 64, 66-67, 791 P.2d 266 (1990). A case is not moot if the court can still provide effective relief. State v. Turner, 98 Wash.2d 731, 733, 658 P.2d 658 (1983).
¶ 7 However, a court may address a moot issue if "matters of continuing and substantial public interest are involved." Sorenson v. City of Bellingham, 80 Wash.2d 547, 558, 496 P.2d 512 (1972). "Three criteria must be considered when determining whether the requisite degree of public interest exists: (1) the public or private nature of the question presented, (2) the need for a judicial determination for future guidance for public officers, and (3) the likelihood of future recurrences of the issue." Matter of Eaton, 110 Wash.2d 892, 895, 757 P.2d 961 (1988). A fourth factor is arguably present: the level of genuine adverseness and the quality of advocacy of the issues. Hart v. Social & Health Svcs., 111 Wash.2d 445, 448, 759 P.2d 1206 (1988).
¶ 8 Because the state has conceded that the condition was improperly applied to Sansone's conduct here, some of Sansone's claims are moot. Sansone's claim that the condition is vague as applied to his conduct in this instance is moot, because the state has conceded that the condition was improperly applied. In addition, Sansone's claims that the state did not prove he violated the sentence condition and that the sentencing court abused its discretion by not admitting certain evidence have also been mooted. We can provide no further effective relief with respect to these claims, as the state has properly *1255 conceded and recommended we overturn the October 30, 2003, order.
¶ 9 We will address Sansone's vagueness challenge because it is a matter of continuing and substantial public interest. All of the required elements are present. The nature of the issue is public, as the community placement condition has the potential to affect a great number of offenders. A decision on this issue would provide future guidance to public officers interacting with offenders on community placement. The issue is also one that is likely to recur. Although Sansone is no longer under community placement and therefore is not subject to the condition, many other sex offenders are subject to the condition. Further, the parties have adequately briefed the constitutional issues. In addition, prior case law supports a decision in this case. Sansone has argued that the condition deprived him of due process of law, and courts have held that "[w]here a technically moot issue implicates due process rights, it is one in which there is sufficient public interest to warrant deciding it." In re Dependency of H., 71 Wash.App. 524, 528, 859 P.2d 1258 (1993). Thus, we may decide the vagueness and delegation issues.

II. First Amendment
¶ 10 Sansone has not challenged the community placement condition on First Amendment grounds; he only cites due process as a basis for invalidating the statute. However, the state's brief suggests that this court use a First Amendment analysis in assessing Sansone's claim. We wish to clarify that since Sansone has not raised any First Amendment claims, we will only address his due process vagueness arguments.
¶ 11 Further, when a challenged prohibition does not involve First Amendment rights, it is not properly evaluated for facial vagueness; instead, it must be evaluated as-applied. Spokane v. Douglass, 115 Wash.2d 171, 182, 795 P.2d 693 (1990). Thus, under the reasoning in Douglass, Sansone can only challenge the condition as applied to his conduct. Douglass, 115 Wash.2d at 182, 795 P.2d 693.

III. Vagueness Challenge
¶ 12 Sansone argues that the community placement condition prohibiting him from possessing pornography without the prior consent of his parole officer is unconstitutionally vague, thereby denying him due process of law. He relies on the reasoning of two recent federal cases that found the term "pornography" to be unconstitutionally vague in the context of a condition of community placement. United States v. Guagliardo, 278 F.3d 868 (9th Cir.2002); United States v. Loy, 237 F.3d 251 (3rd Cir.2001). We find that the term "pornography" is unconstitutionally vague in this context.
¶ 13 The due process vagueness doctrine "serves two important purposes: first, to provide citizens with fair warning of what conduct they must avoid; and second, to protect them from arbitrary, ad hoc, or discriminatory law enforcement." State v. Halstien, 122 Wash.2d 109, 116-17, 857 P.2d 270 (1993). Under the due process clause, a prohibition is void for vagueness if either (1) it does not define the offense with sufficient definiteness such that ordinary people can understand what conduct is prohibited, or (2) it does not provide ascertainable standards of guilt to protect against arbitrary enforcement. Douglass, 115 Wash.2d at 178, 795 P.2d 693. However, a statute or condition is presumed to be constitutional unless the party challenging it proves that it is unconstitutional beyond a reasonable doubt. Haley v. Med. Disciplinary Bd., 117 Wash.2d 720, 739, 818 P.2d 1062 (1991). In addition, "the constitution does not require `impossible standards of specificity' or `mathematical certainty' because some degree of vagueness is inherent in the use of our language." State v. Riles, 135 Wash.2d 326, 348, 957 P.2d 655 (1998).
¶ 14 Here, the term "pornography" is unconstitutionally vague. The term has not been defined with sufficient definiteness such that ordinary people can understand what it encompasses. This is supported by the fact that the community placement condition includes a requirement that "pornography" be defined by the probation officer, a requirement that would be unnecessary if "pornography" *1256 was inherently definite. Moreover, as discussed further below, the DOC employed varying definitions of pornography. The condition does not provide ascertainable standards of guilt to protect against arbitrary enforcement. Sansone cannot ascertain if materials are pornographic without showing them to the probation officer to obtain a determination, which itself exposes him to risk of violation. This is illustrated by the fact that Sansone was detained and punished for having violated the condition that he not possess pornography, despite the fact that the state conceded at the hearing that the materials he had were not pornographic.
¶ 15 The reasoning of the federal courts in Loy and Guagliardo is persuasive.[3] In Loy, the defendant was convicted of receiving and possessing child pornography. Loy, 237 F.3d at 253. He challenged the condition of his supervised release that prohibited him from possessing all forms of pornography, including legal adult pornography. Loy, 237 F.3d at 253. The court noted that the term "pornography" had never been given a precise legal definition. Loy, 237 F.3d at 263. Finding that the defendant could "hardly be expected to be able to discern, in advance, which materials are prohibited," the court held that the prohibition ran "afoul of the due process values that the vagueness doctrine is meant to protect." Loy, 237 F.3d at 264, 265.
¶ 16 In Guagliardo, the defendant was also convicted of possession of child pornography. Guagliardo, 278 F.3d at 870. The defendant challenged a condition of his supervised release that he not possess any pornography, including legal adult pornography. Guagliardo, 278 F.3d at 872. The court noted that a probationer has a due process right to conditions sufficiently clear to inform of what conduct will return him to prison. Guagliardo, 278 F.3d at 872. The court also noted that unlike the term "obscenity," which has a legal definition, the term "pornography" is completely subjective. Guagliardo, 278 F.3d at 872. The court concluded by holding that "[r]easonable minds can differ greatly about what is encompassed by `pornography.' Given this inherent vagueness, Guagliardo cannot determine how broadly his condition will extend.... We remand for the district court to impose a condition with greater specificity." Guagliardo, 278 F.3d at 872.
¶ 17 The state's attempts to distinguish Loy and Guagliardo are unavailing. The state notes that the community placement conditions in those cases had no provisions requiring the probation officer to define "pornography" for the defendant. The state argues that Sansone's condition does not place him in the condition of finding out what material is prohibited after the fact, because the condition requires the probation officer to define for Sansone what material he can possess. If Sansone was unsure as to whether certain materials constituted pornography, the condition contemplates that he would ask his probation officer. However, if in seeking this decision he brought the materials with him to show the officer and the materials were determined to be pornography, Sansone would then be in violation of the conditions of his community placement. Further, it is also possible that Sansone could legitimately believe that there was no question that certain materials he possessed were not pornography under the definition used by his probation officer, and thus not seek guidance from the officer. If the materials were discovered and the parole officer determined that they were pornographic, Sansone would be in violation of the conditions of his community placement. This latter scenario mirrors very closely the facts in this case. It is also a scenario contemplated by the Guagliardo court:
The government asserts that any vagueness is cured by the probation officer's authority to interpret the restriction. This delegation, however, creates "a real danger that the prohibition on pornography may ultimately translate to a prohibition *1257 on whatever the officer personally finds titillating." A probation officer could well interpret the term more strictly than intended by the court or understood by Guagliardo.
Guagliardo, 278 F.3d at 872 (internal citations omitted). Thus, we hold that the community placement condition is unconstitutionally vague.

IV. Delegation
¶ 18 Sansone notes that the Sentencing Reform Act provided that only the sentencing court can impose community placement conditions on him. Thus, he claims that the sentencing court's delegation of authority to the DOC to define pornography violated separation of powers principles. We hold that the delegation here was excessive and that the vagueness of the term "pornography" is not cured by the delegation in these circumstances.
¶ 19 Sentencing courts have the power to delegate some aspects of community placement to the DOC. While it is the function of the judiciary to determine guilt and impose sentences, "the execution of the sentence and the application of the various provisions for the mitigation of punishment and the reformation of the offender are administrative in character and are properly exercised by an administrative body, according to the manner prescribed by the Legislature." State v. Mulcare, 189 Wash. 625, 628, 66 P.2d 360 (1937).
¶ 20 However, sentencing courts may not delegate excessively. A sentencing court "may not wholesaledly `abdicate [] its judicial responsibility' for setting the conditions of release." Loy, 237 F.3d at 266, quoting United States v. Mohammad, 53 F.3d 1426, 1438 (7th Cir.1995). An unconstitutionally vague condition
cannot be cured by allowing the probation officer an unfettered power of interpretation, as this would create one of the very problems against which the vagueness doctrine is meant to protect, i.e., the delegation of "basic policy matters to policemen... for resolution on an ad hoc and subjective basis."
Loy, 237 F.3d at 266, quoting Grayned v. City of Rockford, 408 U.S. 104, 109, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).
¶ 21 Here, the delegation to Sansone's CCO to define pornography was improper. The definition of pornography was not an administrative detail that could be properly delegated to the CCO. That the delegation was improper in this case is illustrated by the fact that there were several definitions of pornography given during the proceedings. In a prior hearing that Sansone was involved in, Bulman defined "pornographic material" as "naked bodies for the sole purposes of sexual enjoyment." In the October 30, 2003, hearing, Sansone's current CCO, Christopher Salindron, stated that the accepted DOC definition of pornography was "[a]nything that will cause sexual arousal of a person." In addition, Bulman had defined pornography for Sansone as: "men and women engaging in sex, nudity .... [s]odomy, masturbation."[4] These definitions are not merely minor variants of one another; they are quite different. The fact that one term could be defined so differently indicates the impropriety of delegation; neither Sansone nor his CCO were put on notice as to what would result in Sansone being sent back to prison.
¶ 22 We note that our holding is limited to the circumstances at hand. A delegation would not necessarily be improper if Sansone were in treatment and the sentencing court had delegated to the therapist to decide what types of materials Sansone could have. In such a circumstance, the prohibition is not necessarily static  it is a prohibition that might change as the probationer's treatment progressed, and is thus best left to the discretion of the therapist.

V. Additional Grounds for Review
¶ 23 Sansone presents eleven additional grounds for review, many of them addressing *1258 more than one issue. Because the issues raised are either unsupported in the record, conclusory, or addressed in the briefing above, we need not consider them.
¶ 24 Reversed and remanded to the sentencing court for imposition of a condition on Sansone's possession of materials that contains the necessary specificity.
WE CONCUR: ELLINGTON, A.C.J., and AGID, J.
NOTES
[1] Bulman testified at the hearing that she noticed the photographs and asked Sansone if she could look at them, and he agreed. Sansone disputed this account, claiming Bulman seized the notebook and the photographs and searched them without Sansone's permission.
[2] In its brief, the state referenced several times an earlier incident with Sansone possessing pornography in violation of his community placement condition. In that case, Sansone challenged the search that led to discovery of that pornography. The state conceded that the search was unlawful, and this court accepted the state's concession, reversed the order and remanded with instructions to suppress the evidence seized. State v. Sansone, No. 53048-8-I, 2004 WL 2002580 (Wn.App. Div. I Sept. 7, 2004). Subsequently, Sansone moved to strike the portions of the state's brief in this case that referenced this incident. As we need not rely on this challenged information to decide this case, we may assume without deciding that the references are improper. On February 7, 2005, the trial court on remand reversed the prior sentencing modification of August 21, 2003, credit the time Sansone served in jail against his community placement time, and terminated community placement.
[3] At least one other state court has found the reasoning in Loy and Guagliardo persuasive. In Smith v. State, 779 N.E.2d 111, 117-18 (Ind.Ct.App.2002), the Indiana Court of Appeals relied on Loy and Guagliardo to hold that the probation condition that the defendant not possess pornographic or sexually explicit materials was unconstitutionally vague. The court held similarly in Fitzgerald v. State, 805 N.E.2d 857, 866-67 (Ind.Ct.App.2004), and Foster v. State, 813 N.E.2d 1236, 1239 (Ind.Ct.App.2004).
[4] The record reflects that this is what Bulman said when Sansone asked her what certain images he possessed displayed. However, Bulman gave this example when Sansone asked her what her definition of pornography was on cross examination at the October 30 hearing. Even if Bulman did not frame this answer as her definition, it is easy to see how this response could be taken as a definition.